## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THREE APPLE IPHONES DESCRIBED AS FOLLOWS: 1) IPHONE WITH A CRACKED BACK AND IMEI: 353105103790077, 2) IPHONE WITH A CRACKED BACK, UNKNOWN IMEI, AND 3) IPHONE IN A CLEAR CASE WITH CIRCLE AND LINE ON THE BACK, UNKNOWN IMEI ALL CURRENTLY LOCATED AT THE FBI PORTLAND RESIDENT AGENCY | No. 2:24-mj-00067-KFW |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Jonathan Duquette, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of three electronic devices described more particularly below, which are currently in law enforcement possession, and the extraction from those devices of electronically stored information described in Attachment B.

2.  I am a Task Force Officer with the Federal Bureau of Investigation (FBI). I have been in this position since June 2015, and I have been a Task Force Officer in FBI's Boston Division since January 2018. I am also a Border Patrol Agent with the U.S. Border Patrol and have been in this position since December 2009. In my career, I have utilized various investigative tools and techniques, to include the use of search warrants.

3. This affidavit provides information sufficient to show that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

4. For reference, a previous search warrant affidavit has been filed in the United States District Court, District of Maine Case No. 2:24-mj-54-KFW and is attached as Exhibit 1. As further described in paragraph 9 of that affidavit, two cellular telephones were recovered while executing a judicially authorized warrant. The cellular telephones were recovered from a green 2023 Honda HR-V, bearing New Hampshire Passenger Car Registration Number 5154753, bearing VIN 3CZRZ2H58PM705896 (the "Subject Vehicle"). The recovered cellular telephones are described as 1) an Apple iPhone with a cracked back and IMEI: 353105103790077 ("Target Device 1"), and 2) an Apple iPhone with a cracked back and unknown IMEI ("Target Device 2"). Target Device 1 and Target Device 2 were both powered off when recovered and have been transferred to the FBI Portland Resident Agency. Photographs of the Target Devices appear below.

 

        Target Device 1                  Target Device 2

5.     As documented in Exhibit 1, JOSHUA ESTRADA has been identified as a Target Subject who fled the Subject Vehicle after a crash. A wanted person query identified several arrest warrants out of Massachusetts for JOSHUA ESTRADA. They included "A&B on family / household member", "A&B, Pregnant Victim", "Number Plate, take", "Motor Veh, receive stolen". All warrants were entered on September 22, 2023.

6.     On February 23, 2024, police officers from the New Bedford, Massachusetts Police Department conducted a traffic stop on a blue Dodge Dakota in the area between 629 – 631 Brock Ave., New Bedford, MA. JOSHUA ESTRADA was the front passenger of the blue Dodge Dakota. An officer recognized JOSHUA ESTRADA and knew he had several active warrants. Once the warrants were confirmed, JOSHUA

ESTRADA was placed under arrest. ESTRADA was found to be in possession of an Apple iPhone ("Target Device 3"), which was seized at the request of Task Force Officer Ryan Hatch. Target Device 3 was ultimately turned over to the FBI pending legal process. A photograph of Target Device 3 appears below.



Target Device 3

7. During the course of this investigation, JOSHUA ESTRADA's telephone number was identified by two individuals as 207-730-2993 ("2993"). As documented in Exhibit 1, Paragraph 17, Saco Police Officers had communicated with a confidential source of information ("SOI-1"). During that interaction, SOI-1 provided a telephone number for JOSHUA ESTRADA as 207-730-2983. A follow-up interview with SOI-1 provided a different telephone number for ESTRADA as 207-730-2993 ("2993"). SOI-1 believed the number ending in 2983 was transcribed incorrectly by the Saco officer, and 2993 was the correct number.

8. Also in Exhibit 1, Paragraph 19, an individual who wound not provide his name ("Anonymous Source-1 or "AS-1") provided information to a Saco officer about ESTRADA. AS-1 provided ESTRADA's telephone number as 207-730-2993, and identified ESTRADA as someone who sells heroin.

9. The service provider for 2993 was determined to be Verizon Wireless (VZW). Records from VZW identified the subscriber as JOSHUA ESTRADA, 8C Pinebrook Te, Old Orchard Beach, Maine. Records for the Device ID identified ESTRADA's phone (with assigned call number 2993) as an Apple iPhone 15 with IMEI: 356321251237327. Call detail records showed 2993 was used approximately 90 times on February 9, 2024, between 12:03 PM (EST) and 5:10 PM (EST). Further review of those call detail records shows bi-directional voice calls and text messages. The voice calls ranged in length from seconds to several minutes.

10. I have reviewed photographs of the Apple iPhone that was in ESTRADA's possession during his arrest on February 23, 2024, to a stock photograph of an Apple iPhone 15. The two appear similar. The similarity between the two photographs, and the fact that ESTRADA's usage of his phone after the crash (on February 9th), as documented by the call detail records, I believe ESTRADA had possession of his phone after the shooting and subsequent car crash and is likely Target Device 3.

11. The Target Devices are currently in storage at the FBI Portland Resident Agency. In my training and experience, I know that the Target Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Target Devices first came into the possession of the FBI.

## **TECHNICAL TERMS**

12. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen

for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

   c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

   d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

   e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and

utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

    f.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

  13. Based on my training, experience, and research, I believe that the devices located inside the vehicle have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

  14. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, websites and other content that have been viewed via the Internet are typically stored for some period of

time on the accessing device. This information can sometimes be recovered with forensics tools.

15. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application

of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

  16. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

  17. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

  18. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Target Devices described in Attachment A to seek items described in Attachment B.

Respectfully submitted,

Jonathan Duquette
Task Force Officer
Federal Bureau of Investigation

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: Mar 05, 2024

City and state: Portland, Maine

Karen Frink Wolf, U.S. Magistrate Judge
*Printed name and title*